OPINION
{¶ 1} Douglas Francis is appealing the judgment of the domestic relations division of the Montgomery County Common Pleas Court, which designated Karmen Francis the residential parent of the parties' child and ordered Douglas Francis to pay child support.
 {¶ 2} In 1993, Douglas and Karmen Francis were married in Belton, Texas.[1] Douglas was in the United States Army at the time, and Karmen had a daughter from a previous marriage. The family was transferred to Germany, where they had a child, Kerri Ann, on December 19, 1995. When the parties returned to the United States, they were stationed in Maryland and then later, moved to Ohio. Mr. Francis has since retired from the military because he is ten percent disabled. The parties had marriage difficulties throughout the marriage. While in Maryland, they attempted counseling but were unsuccessful. In August of 1999, the parties filed this divorce action, along with reciprocal civil domestic violence cases, which were later dismissed.
 {¶ 3} The parties agreed to share custody of Kerri Ann during the pendency of the divorce action. The divorce action was extended due to several delays and thus, the final decree was not filed until May 22, 2002. During the pendency of the divorce action, the parties alternated custody of Kerri Ann every four days. According to Karmen, Douglas arbitrarily withheld the child from Karmen at times and was inflexible in working with Karmen on her work schedule. The guardian ad litem interviewed both parties and visited the homes of both parties. The guardian ad litem filled an initial report in October 2000, which recommended that Karmen be designated the residential parent and Douglas be given liberal visitation. In November of 2001, the guardian ad litem updated the report and again recommended that Karmen be designated the residential parent. The report acknowledged Karmen's plan to relocate to Texas but still recommended Karmen as the residential parent.
 {¶ 4} The trial court agreed with the guardian ad litem and designated Karmen the residential parent. Further, the trial court ordered Douglas to pay child support in the amount of $463 per month, and set Douglas's arrears at $2,122.50 as of May 11, 2002. Douglas has filed this appeal from that decision. Douglas moved for a stay of the judgment from the trial court and from this court, but both motions were denied.
 {¶ 5} Douglas raises the following assignments of error:
 {¶ 6} "I. The trial court erred in finding that it was in the best interest of the child, Kerri Ann Francis, to have Karmen Francis as the residential parent by not complying with the mandates of 3109.04 O.R.C.
 {¶ 7} "II. The trial court erred in determining the income of Douglas Francis for the calculation of support."
Appellant's first assignment of error:
 {¶ 8} Douglas argues that the trial court abused its discretion in applying the O.R.C. 3109.04(F)(1) factors when it designated Karmen as the residential parent. We disagree.
 {¶ 9} A trial court has broad discretion in determining the custody of a child and this discretion will not be reversed absent an abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 73-74. An abuse of discretion amounts to more than a mere error in judgment but connotes that the trial court demonstrated an unreasonable, arbitrary, or unconscionable attitude. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Additionally, an appellate court must be guided by a presumption that the trial court's findings are correct as the trial court is in the best position to view the witnesses and assess their credibility. Hillv. Hill (July 20, 1995), Pickaway App. No. 94CA22. Therefore, a trial court's award of custody must be sustained if supported by a substantial amount of competent, credible evidence. Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23.
 {¶ 10} O.R.C. 3109.04(F)(1) sets forth the following factors for the court to consider when determining the best interests of a child in allocating parental rights:
 {¶ 11} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 12} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 13} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 14} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 15} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 16} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 17} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 18} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 {¶ 19} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 20} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04.
 {¶ 21} However, a trial court is not limited to the listed factors in R.C. 3109.04(F) but may consider any other relevant factors. R.C.3109.04(F)(1). Further, when a court considers the best interests of a child, the court should consider which parent is the child's primary caregiver. Kelly v. Kelly, Miami App. No. 2001-CA052, 2002-Ohio-1204.
 {¶ 22} Douglas argues that he was Kerri Ann's primary caregiver and thus, Karmen should not have been designated the residential parent. In support of his assertion, Douglas argues that Kerri Ann lived with him on his parent's farm until the time of the parties' separation. However, the evidence presented at the hearing demonstrated that Karmen and Douglas lived together on the farm until the parties separated. Further, Karmen was a housewife during this period, and she testified that she had been primarily responsible for Kerri Ann's care while the parties were together. In contrast to Douglas's argument, Karmen argues that she was Kerri Ann's primary caregiver. The evidence further demonstrated that Kerri Ann's time had been equally divided between Douglas and Karmen since the parties separated. The trial court made no finding as to which parent was the child's primary caregiver, which may have been as a result of the evidence demonstrating a fairly equal division of Kerri Ann's care.
 {¶ 23} Therefore, the trial court may not have necessarily erred in failing to consider Kerri Ann's primary caregiver as Douglas suggests. Rather, the evidence presented at the hearing supported a finding that neither parent was Kerri Ann's primary caregiver or that Karmen was Kerri Ann's primary caregiver. Based on the evidence presented at the hearing we cannot say that the trial court abused its discretion in failing to find that Douglas was Kerri Ann's primary caregiver.
 {¶ 24} Additionally, Douglas argues that the trial court erred in applying the R.C. 3109.04(F)(1) factors which supported designating Karmen the residential parent. In addressing the factors, R.C. 3109.04(F)(1)(a) and (b) were not helpful in designating a residential parent as both parents wished to have the child live with them and the trial court, after conducting an in camera interview, determined that Kerri Ann did not have sufficient reasoning ability to express her wishes and concerns. Douglas urges this Court to obtain a transcript of the in camera interview. However, if he wished this court to review the trial court's judgment on Kerri Ann's expressed wishes he needed to obtain a transcript and file it with this court. As no transcript of the in camera interview was filed with this court, we must assume that the trial court properly determined that Kerri Ann could not express her wishes and concerns.
 {¶ 25} Subsection (c) required the trial court to consider the interaction and interrelationships between Kerri Ann and her parents, siblings, and any other person who might affect her best interest. Douglas argues that the trial court did not consider this factor properly as there was evidence of the close bond Kerri Ann has with him and his mother and sister. However, at the hearing there was also significant evidence of the close bond Kerri Ann has with her mother and her half sister. Witnesses for Karmen and the guardian ad litem both testified that Kerri Ann has an extremely close relationship with her half sister and recommended maintaining that relationship. Therefore, the trial court may have considered this factor and found it favored designating Karmen the residential parent.
 {¶ 26} Subsection (d) provides that the court shall consider the child's adjustment to school and community. Douglas argues that the court erred in designating Karmen the residential parent because Karmen planned to take Kerri Ann to Texas and no home study was conducted of a proposed home in Texas. Although the evidence demonstrated that Kerri Ann was enrolled in school and had lived in the vicinity of her father's family's farm for several years, Kerri Ann was a military child and had moved on several occasions previously. Further, Kerri Ann was only in kindergarten at the time of the hearing and was more capable of relocating. Additionally, a home study of Karmen's home in Ohio was conducted and found to be adequate. There is no basis to believe that Karmen can maintain an adequate home in Ohio but not in Texas. Moreover, even if this factor supported not designating Karmen the residential parent, this was only one of several factors the trial court considered.
 {¶ 27} Subsection (e) addresses the mental and physical health of the parties. Douglas argues that he presented evidence that Karmen had been treated for depression and prescribed Prozac. Based on this evidence, Douglas argues that the trial court erred in designating Karmen the residential parent. However, the evidence presented at trial demonstrated that although Karmen had been treated for depression during the parties' marriage, since the divorce Karmen no longer had felt depressed and had stopped taking her medication as she no longer had felt the need for it. Although Douglas makes much of Karmen's prescription for Prozac, Karmen testified that she had been on the lowest dose of Prozac available. Additionally, Douglas testified that he had lung problems and had been designated as ten percent disabled by the military. Therefore, we cannot agree with Douglas that this factor weighed against designating Karmen the residential parent.
 {¶ 28} Significantly in the instant case, subsection (f) requires the trial court to consider which parent would be most likely to honor visitation. Although Douglas argues to this Court that there was no evidence that he did not honor visitation during the pendency of the divorce proceedings, Karmen testified to the contrary. Karmen argued at the hearing that she was opposed to an order for shared parenting because Douglas was very controlling and would not cooperate with her regarding visitation. Karmen testified that during the pendency of the divorce proceedings Douglas had refused to give Kerri Ann to Karmen on one occasion, had blocked phone calls from Karmen, had been late in returning Kerri Ann to Karmen, had refused to be flexible around Karmen's work schedule, and had otherwise failed to collaborate with Karmen regarding the best interests of Kerri Ann. In contrast, evidence was presented that Karmen had consistently encouraged Kerri Ann to have extensive visitation with Douglas and his family. Evidence was presented at the hearing that Karmen was the parent most likely to honor visitation. Thus, this factor also does not indicate error by the trial court in designating Karmen the residential parent.
 {¶ 29} Further, subsection (g) addresses whether either parent has completely honored child support payments. Douglas is approximately $1,600 in arrears on temporary child support in the instant case. This factor also supports the trial court's designation of Karmen as the residential parent.
 {¶ 30} Subsections (h) and (i) are not relevant to the underlying matter as no evidence was presented alleging abuse of the child by either parent and neither parent had continuously and willfully denied the other parent's right to parenting time pursuant to a court's order.
 {¶ 31} Finally, subsection (j) mandates that the trial court consider whether one of the parents is relocating out of the state. Karmen proposed from the beginning of the divorce proceedings that she wished to relocate with Kerri Ann to Texas. She presented evidence that Douglas had a house in Texas which he rented and that he could move to Texas if he wished. Additionally, Karmen testified that she had family who could offer her support in caring for her children in Texas. The trial court was well aware of Karmen's plan to relocate. Douglas can present no evidence that the trial court failed to consider it.
 {¶ 32} Having reviewed the relevant factors under R.C. 3109.04(F), we cannot say that the trial court abused its discretion in ordering that Karmen be designated the residential parent and permitting her to relocate to Texas. Douglas's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 33} Douglas argues that the trial court erred in calculating his income for the purposes of child support. We agree.
 {¶ 34} Douglas argues that the trial court erred in calculating child support when it imputed more income to him than the evidence supported. Karmen argues that even if the trial court erred it was harmless error. In calculating Douglas's income for child support purposes, the trial court averaged Douglas's adjusted gross income from his tax returns of 1999, 2000, and 2001 and reached the figure of $23,142.00. The trial court next added to this figure Douglas's retirement income of $11,712.00 to find that Douglas had an income of $34,854.00. Douglas argues that this was error because his adjusted gross income from his tax return already included his retirement income.
 {¶ 35} Karmen concedes that this was error; however she asserts that the error was harmless. Douglas testified at the hearing that he voluntarily worked only 32 hours a week for $10.40 per hour, which provides him an annual income of $17,305.60. Additionally, Douglas receives $11,712.00 of retirement income each year. His total income from these two sources amount to $29,017.60. Yet, Douglas also has additional income from a rental property he owns in Texas that has provided him with gross rental income of $8,541 in 1999 and $5,398 in 2000. Yet, due to depreciation, mortgage interest, and other expenses, these rental incomes only amounted to $64 and $784 of adjusted gross income in his 1999 and 2000 tax returns respectively. Therefore, an amount of rental income could be imputed to Douglas of approximately $5,000 which when added to Douglas's other $29,017.60 of income would be the equivalent of the trial court's finding of income of $34,854.00. Additionally, Karmen asserts that the adjusted gross incomes listed in the tax returns did not take into consideration the portion of Douglas's retirement that is disability payments. Further, Karmen asserts that since Douglas was voluntarily only working 32 hours per week, the trial court could have imputed a forty hour work week to him and justified his increased income for that purpose. Thus, she argues the trial court's calculation error was harmless.
 {¶ 36} Although as Karmen suggests there are means by which the trial court could have found Douglas to have an income of approximately $35,000, the trial court did not utilize those means to calculate Douglas's income. The trial court clearly erred in adding Douglas's entire retirement income to his average adjusted gross income over the three year period because his retirement was already at least partially included in his adjusted gross income. As there are many factors the trial court might consider in calculating Douglas's income for child support, we cannot say that this error was harmless. Douglas's second assignment of error is sustained. The judgment of the trial court is reversed and the case is remanded for the trial court to recalculate Douglas's income for a determination of child support.
 {¶ 37} The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded.
FAIN, P.J. and GRADY, J., concur.
[1] In the interest of clarity, we will hereinafter refer to the parties by their first names.